NOT FOR PUBLICATION

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FILED

JUN 21 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| IDAHO CONSERVATION LEAGUE,<br><br>Petitioner,<br><br>v.<br><br>BONNEVILLE POWER ADMINISTRATION,<br><br>Respondent. | No. 12-70338<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Bonneville Power Administration

Argued and Submitted October 6, 2014
Portland, Oregon

Before: **KOZINSKI**, **FERNANDEZ** and **DAVIS**,[**] Circuit Judges.

**1.** It's generally sufficient for an environmental assessment (EA) to consider only a no-action and preferred alternative. Earth Island Inst. v. U.S. Forest Serv., 697 F.3d 1010, 1021–22 (9th Cir. 2012). But see W. Watersheds Project v. Abbey,

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Andre M. Davis, Senior Circuit Judge for the U.S. Court of Appeals for the Fourth Circuit, sitting by designation.

719 F.3d 1035, 1051–53 (9th Cir. 2013) (finding deficient an EA that considered one no-action alternative and three action alternatives). The EA at issue considers no-action and preferred alternatives at length. It also explains that two other alternatives did not merit extended consideration because they weren't feasible. See Ctr. for Biological Diversity v. Salazar, 695 F.3d 893, 916 (9th Cir. 2012). And the preferred alternative contains various measures aimed at "[m]inimizing impacts [of flexible winter power operations] by limiting the degree or magnitude of the action." 40 C.F.R. § 1508.20(b) (defining mitigation). Finally, the EA explains that the agencies rejected proposed monitoring and mitigation strategies because BPA already engages in monitoring and mitigation for existing operations at the Dam. Accordingly, BPA's failure to discuss a monitoring and mitigation alternative in the EA was not arbitrary and capricious. See Earth Island Inst., 697 F.3d at 1023.

2. We reject the contention that the EA violates NEPA's "hard look" requirement by failing to incorporate up-to-date baseline information to analyze the environmental impacts of flexible winter operations. With respect to erosion, the EA supplements historical information with citations to and discussions of more recent studies. And with respect to the flowering rush, the EA relies on first-

hand observations of the rush's spread around Lake Pend Oreille as well as recent analyses of the origin and spread of this invasive species. The EA thus demonstrates that BPA "ha[d] available, and . . . carefully consider[ed] detailed information" concerning the possible impacts of flexible winter operations on erosion and the flowering rush. N. Idaho Cmty. Action Network v. U.S. Dep't of Transp., 545 F.3d 1147, 1153 (9th Cir. 2008).

Nor are we persuaded that the EA's analysis of wildlife impacts is deficient because its conclusion might have changed, had it considered more extensive data regarding erosion and the flowering rush. Because BPA took the requisite hard look at those two environmental factors, Petitioner's challenge to the EA's analysis of wildlife impacts also fails.

Petitioner finally argues that the EA is deficient because it fails to consider recent wildlife surveys. But Petitioner has pointed us to no case, and we are not aware of any, in which an otherwise sufficient EA violated NEPA for failing to incorporate such surveys. See, e.g., N. Plains Res. Council v. Surface Transp. Bd., 668 F.3d 1067, 1085–86 (9th Cir. 2011) (faulting an EIS for relying on stale data); Lands Council v. Powell, 395 F.3d 1019, 1031 (9th Cir. 2005) (same). In any event, "the primary wildlife concern [associated with flexible winter operations] is related to loss of habitat around the lake from erosion," and BPA adequately

analyzed erosion impacts.  Accordingly, BPA fulfilled its duty "to take a 'hard look' at how the choices before [it] affect the environment, and then to place [its] data and conclusions before the public."  W. Watersheds, 719 F.3d at 1047.

3.  BPA's motion to strike the declarations of Kathryn Didricksen and John Robison is **GRANTED IN PART**.  We strike paragraphs 8–11 of the Didricksen declaration, paragraphs 7 and 13 of the Robison declaration and the portions of Petitioner's opening brief that rely on those paragraphs as they seek to add evidence in support of Petitioner's substantive claims.  The remaining portions of the declarations are allowed for the limited purpose of explaining the administrative record.  See Idaho Conservation League v. Mumma, 956 F.2d 1508, 1520 n.22 (9th Cir. 1992) (as amended).  BPA's motion for judicial notice is **GRANTED**.  See Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation, 655 F.3d 1000, 1010 n.5 (9th Cir. 2011).

We address Petitioner's remaining claims in an opinion filed concurrently herewith.

**DENIED.**